SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JARED K. LEBEAU, Cal. Bar No. 292742
JOSEPH E. FOSS, Cal. Bar No. 198294
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
Facsimile: 619.234.3815
E mail jlebeau@sheppard.com
jfoss@sheppard.com

Attorneys for Plaintiff
United Financial Casualty Company

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA ARTISANAL MEDICINE, INC., a California corporation; CONNOR LEE, an individual,<br><br>Defendants. | Case No. 2:26-cv-02503-DAD-CKD<br><br>**UNITED FINANCIAL CASUALTY COMPANY'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |

Plaintiff United Financial Casualty Company ("UFCC") alleges as follows:

**INTRODUCTION**

1. UFCC brings this action to obtain a declaration that it does not have extra-contractual liability or obligations to defendant Jimmy Contreras ("Contreras") – who is the assignee of California Artisanal Medicine, Inc. ("CAM") and Connor Lee ("Lee") – in connection with (i) UFCC's handling of a bodily injury claim presented by Contreras against CAM and Lee, or (ii) the related lawsuit entitled *Jimmy Contreras v. California Artisanal Medicine and Connor Lee*, Sacramento County Superior Court, Case No. 23CV011437 (the "Underlying Litigation").

**PARTIES[1]**

2. UFCC is a corporation organized under the laws of the State of Ohio and is licensed to do business in the State of California.

3. UFCC is informed and believes, and on that basis alleges, that defendant Contreras is, and at all times relevant to this Complaint was, a resident domiciled in California, and therefore a citizen of the State of California.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over this action under 28 U.S.C. section 1332(a)(1). There is complete diversity of citizenship between UFCC and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this Court under 28 U.S.C. section 1391(b)(1) and (2) because Defendants reside in this District, and the controversy and obligation at issue arise out of an accident, underlying litigation, and a resulting judgment that all occurred in this District.

---

[1] The original complaint in this action named CAM and Lee as the only defendants. However, as outlined below, it later came to UFCC's attention that CAM and Lee assigned the rights at issue in this lawsuit over to Contreras. Therefore, this First Amended Complaint asserts claims solely against Contreras and not CAM or Lee.

# FACTUAL ALLEGATIONS

## The Insurance Policy

6. UFCC issued a commercial automobile insurance policy, no. 00458105-2, to CAM for the period of June 20, 2023 to December 20, 2023 (the "Policy"). The Policy had liability coverage with a combined single limit of $750,000 per accident. A true and correct copy of the Policy and the applicable declarations page is attached hereto as **Exhibit 1.**

## The Accident and Subsequent Claim/Underlying Litigation

7. On October 1, 2023, CAM reported to UFCC that Lee had been involved in a collision with third-party claimant Contreras (the "Accident"). At the time of the Accident, Lee was an employee of CAM and qualified as an insured under the Policy. UFCC assigned claim number 25-5734378 to the loss and began its investigation of the Accident (the "Claim").

8. On November 3, 2023, based on the available information, UFCC determined that Lee was at fault for the Accident.

9. On December 1, 2023, CAM e-mailed UFCC a copy of a summons and complaint that had been served on it on November 30, 2023 (the "Complaint"). The Complaint was filed by the Dreyer Babich firm on November 13, 2023, on behalf of Contreras in Sacramento County Superior Court in a case entitled *Jimmy Contreras v. California Artisanal Medicine and Connor Lee*, Case No. 23CV011437 (the "Underlying Litigation"). The Complaint asserted a single cause of action for personal injury/negligence against CAM and Lee. After receiving the Complaint, UFCC referred the matter to the Borton Petrini firm ("defense counsel") to defend CAM and Lee.

10. On December 26, 2023, CAM and Lee filed an answer to the Complaint. Defense counsel thereafter began conducting discovery into Contreras's alleged injuries and treatment, including written discovery to Contreras. In response, although Contreras provided some information and medical

documentation, his document production appeared incomplete. For example, the document production did not appear to have all of Contreras's relevant medical bills. Therefore, defense counsel subpoenaed Contreras's known medical providers in an attempt to obtain more complete medical bills and records.

11. On April 8, 2024, UFCC received some subpoenaed records from UC Davis Medical Center where Contreras was hospitalized from October 1 to 6, 2023 and received follow-up care for treatment of his claimed accident-related injuries. The medical records indicated that Contreras had sustained several injuries, including fractures in his lower leg that required surgery. The records also indicated that while Contreras claimed to have lost consciousness during the Accident, he was alert and oriented when he arrived at the emergency room with no obvious signs of trauma to his head or face. The records that UFCC received also included some of Contreras's medical bills, most of which were reduced or paid by health insurance.

12. Just two days later, on April 10, 2024, Contreras's counsel served Lee with a C.C.P. section 998 offer for $750,000. The offer was directed to Lee but stated that acceptance would also include a dismissal of all claims against CAM. Although the offer represented that Contreras would satisfy any potential liens, it did not elaborate on how specifically any liens would be resolved and was silent as to whether any lienholder could be included as part of any final settlement payment (including potential lienholders that may have their own independent claims).

13. The following week, UFCC was advised by defense counsel that they estimated Contreras's damages to total approximately $100,000 to $125,000, and that his high-end recovery could range from $150,000 to $225,000.

14. On May 9, 2024, UFCC conducted its own review and analysis of Contreras's medical records and bills. UFCC calculated Contreras's recoverable medical expenses to be $16,023 (under *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 555-56 (2011)). As part of that evaluation, UFCC also noted

that there had been a prior property damage settlement in the amount of $3,995.56, which reduced the available coverage to approximately $746,004.44.

15. At that time, because UFCC did not have all of the information and documentation that it needed to reasonably and fairly evaluate all of Contreras's claimed injuries, treatment, and damages, UFCC requested an open extension on the deadline to respond to Contreras's demand. UFCC also advised Contreras's attorney that UFCC still needed pre-accident medical records, complete post-accident medical and billing records, Contreras's deposition, an independent medical examination ("IME"), and wage loss documentation. But based on the information it had available, UFCC evaluated the injuries, treatment, and damages for which it had the necessary supporting documentation and information, and made a settlement offer of $326,368.

16. On May 16, 2024, Contreras's attorney provided an updated medical billing summary that totaled $55,881. However, they refused to grant the request for an open extension and, instead, would agree to extend the demand response deadline by 30 days to June 11, 2024, with no further extensions.

17. The time allowed to respond to the April 2024 section 998 offer, including the limited 30-day extension, was not sufficient for UFCC to obtain the above-noted additional documentation and information it needed to fairly evaluate the claim.

18. UFCC reevaluated Contreras's claim based on the updated medical documentation. But that limited additional documentation, without more, did not support that Contreras's claim was substantially likely to exceed the policy limit. Moreover, UFCC still needed the remaining medical documentation, deposition, IME, and wage loss documentation that it had previously requested. For those reasons, and because Contreras's attorney would not provide any further extensions to allow UFCC to obtain that necessary additional information, UFCC decided to allow the 998 offer to expire while it continued with discovery.

19. However, UFCC did increase its settlement offer to $350,000 based on the additional medical documentation it had received. Contreras did not accept that offer, so the case proceeded through discovery.

20. UFCC's settlement offers were commensurate with the injuries, treatment, and damages it could verify with the necessary corroborating documentation and information. UFCC remained ready and willing to update its evaluations and increase its settlement offers once it was provided the additional information and documentation that it had previously requested.

21. During the time the April 2024 section 998 offer remained pending, Contreras's recoverable medical expenses appeared to be at most $75,000; he had less than $20,000 in claimed lost wages; there had been no formal diagnosis or treatment for his claimed traumatic brain injury; there was an indication that Contreras could have been partially at fault for the accident; and defense counsel had opined that the settlement value of Contreras's case was far below the policy limit.

22. For the above-noted reasons, UFCC did not accept the April 2024 section 998 offer, including because UFCC's evaluations of Contreras's bodily injury claim, based on the information and documentation that had been presented, were consistently below the policy limit.

23. In November 2024, Contreras was deposed. Defense counsel advised UFCC that they did not believe his deposition meaningfully affected the value of his case.

24. In August 2025, UFCC learned that Contreras's attorney had served supplemental responses to discovery, which included additional medical records showing that Contreras had undergone further medical treatment (including an additional surgery and multiple injections in his lower back). Contreras's billed medical expenses had increased to approximately $373,091 (of which UFCC calculated approximately $121,000 to be recoverable under *Howell*).

25. Based on the additional medical documentation it had received, UFCC reevaluated Contreras's Claim. Although it was still unclear whether any adverse verdict would exceed the policy limit,[2] in the interests of compromise and as a business decision to avoid further litigation, UFCC decided to offer Contreras the policy limit.

26. On September 4, 2025, UFCC served a C.C.P. section 998 offer for $750,000 to resolve Contreras's claims against CAM and Lee. Although the Policy had a single combined limit, UFCC did not reduce its offer by the amount of the prior property damage settlement.

27. At the time of UFCC's policy limit offer and during the pendency of the Underlying Litigation, defense counsel opined that any adverse verdict would be well within the policy limit.

28. Contreras did not accept UFCC's 998 offer. Other than his initial 998 offer in April 2024, at no point during the Underlying Litigation did Contreras ever express an interest in settling, or offer to settle, his claims against CAM and Lee for UFCC's policy limit.

29. In February 2026, the Underlying Litigation went to a bench trial, after which the judge returned a decision in favor of Contreras, and against CAM and Lee, in the amount of $10,184,548.25.

30. In May 2026, the Court awarded costs to Contreras in the amount of $20,595.26 and entered a final judgment in favor of Contreras, and against CAM and Lee, in the amount of $10,205,143.51 (the "Judgment").

31. A dispute now exists as to whether UFCC is required to pay the entire Judgment, or any other amount toward that Judgment beyond the $750,000 policy

---

[2] In fact, UFCC subsequently received an IME report from Dr. Roland H. Winter, in which he opined that apart from Contreras's leg and sternum injuries, his other claimed injuries and treatment for his neck, back, and knee were all unrelated to the Accident.

limit, based on the theory that UFCC unreasonably and/or in bad faith failed to settle Contreras's Claim and/or the Underlying Litigation. UFCC denies that it has any such obligation.

32. In August 2026, UFCC was informed by counsel for Contreras that, in exchange for Contreras granting CAM a covenant not to execute on the Judgment against CAM or its assets, CAM had assigned its assignable rights against UFCC over to Contreras as they relate to the Claim, Underlying Litigation, and/or Judgment.

33. In September 2026, UFCC was informed by Contreras's counsel that Lee had reached a similar agreement and assigned his assignable rights against UFCC over to Contreras in exchange for a covenant that Contreras would not execute on the Judgment against Lee or his assets.

34. As part of those covenant/assignment agreements, both CAM and Lee agreed not to assert or otherwise pursue any non-assignable claims that they may retain against UFCC as it relates to the Claim, Underlying Litigation, and/or Judgment.

35. Therefore, Contreras is now the real party in interest for purposes of UFCC's claims in this case. Consistent with that, UFCC now files this First Amended Complaint to add Contreras as a defendant but no longer asserts any claims against CAM or Lee.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

36. UFCC re-alleges and incorporates paragraphs 1 through 35 as fully set forth herein and incorporates them in their entirety by this reference.

37. An actual and justiciable controversy exists between UFCC and Contreras (as the assignee of CAM and Lee) concerning UFCC's rights, duties, and obligations under the Policy in connection with the Claim, the Underlying Litigation, and the resulting Judgment.

38. Specifically, a dispute exists as to whether UFCC breached its duties to CAM/Lee by failing to settle the Claim and/or Underlying Litigation for the policy limit or is otherwise responsible for paying the entire excess Judgment against CAM/Lee. UFCC denies that it breached any duty to settle Contreras's claims, or that it has any obligation to pay any amount toward the Judgment beyond the $750,000 policy limit, for multiple independent reasons, including:

(i) Contreras's April 2024 C.C.P. Section 998 offer was not a reasonable settlement offer for multiple independent reasons, including because the information presented to UFCC at that time did not support that Contreras's claim was substantially likely to exceed the policy limit, and because that offer did not provide UFCC a reasonable amount of time to investigate and evaluate the Claim; and

(ii) UFCC's response to Contreras's April 2024 section 998 offer was reasonable for multiple independent reasons, including because UFCC made settlement offers commensurate with the injuries, treatment, and damages it could verify, requested further medical documentation and information to corroborate Contreras's claimed injuries, symptoms, and treatment (as well as requested an extension so that it could obtain that information), and timely offered the policy limit upon receiving documentation that warranted a policy limit settlement.

39. Pursuant to 28 U.S.C. § 2201(a), the Court may and should declare the rights of the parties with respect to this controversy.

## PRAYER FOR RELIEF

Wherefore UFCC prays for relief as follows:

1. A judicial declaration that UFCC has no duty to pay for the entire Judgment or any other amount toward that Judgment in excess of the $750,000 policy limit;

2. For costs of suit; and

3. For such other and further relief as the Court may deem just and proper.

Dated: September 15, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By ______________________________
JARED K. LEBEAU

Attorneys for plaintiff United Financial Casualty Company

**DEMAND FOR JURY TRIAL**

Plaintiff United Financial Casualty Company hereby demands a jury trial on all issues triable by jury.

Dated: September 15, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ Jared LeBeau

JARED K. LEBEAU

Attorneys for plaintiff United Financial Casualty Company

# EXHIBIT 1

PROGRESSIVE

Date: 07/6/2026
Policy Number: 00458105-002
Claim Number: 23-5734378
Underwriting Company: United Financial Casualty Company

I certify that each of the following is true regarding the attached records, to the best of my knowledge and belief:

1. I am an employee familiar with the manner and process in which these records are created and maintained by virtue of my duties and responsibilities.

2. The records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, people with knowledge of those matters;

3. The records were kept in the course of regularly conducted business activity; and

4. It was the regular practice of the business activity to make the record.

*Anita Kern*
Claims Support Specialist

MFE INSURANCE
1019 E 4TH PL
LOS ANGELES, CA 90013

PROGRESSIVE
COMMERCIAL

Named insured

CALIFORNIA ARTISANAL
MEDICINE, INC
20 BLUE SKY COURT
SACREMENTO, CA 95828

Policy number: 00458105-2
Underwritten by:
United Financial Cas Co
September 21, 2023
Policy Period: Jun 20, 2023 - Dec 20, 2023
Page 1 of 4

agent.progressive.com
Online Service
Make payments, check billing activity, print policy documents, or check the status of a claim.

1-213-634-2500
MFE INSURANCE
Contact your agent for personalized service.

1-800-444-4487
For customer service if your agent is unavailable or to report a claim.

# Commercial Auto Insurance Coverage Summary This is your Declarations Page Your coverage has changed

Your coverage began on June 20, 2023 at 12:01 a.m. This policy expires on December 20, 2023 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (02/19). The contract is modified by forms 2852CA (02/19), 4759CA (02/19), 4757 (02/19), 1890 (02/19), MC1632 (06/04), Z311 (02/19), 4852CA (02/19), 4881CA (02/19) and Z228 (01/11).

The named insured organization type is a corporation.

## Policy changes effective September 20, 2023

| | |
|---|---|
| Premium change: | $0.00 |
| Changes: | The driver information has changed.<br>The history of violations has changed. |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | [redacted] |
| Bodily Injury and Property Damage Liability | $750,000 combined single limit | | |
| Employer Non-Owned Auto Liability To Others | | | [redacted] |
| Bodily Injury and Property Damage Liability | $750,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $750,000 combined single limit | | [redacted] |
| Uninsured Motorist Property Damage | Rejected | | – |
| Medical Payments | $5,000 each person | | [redacted] |
| Comprehensive | | | [redacted] |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Collision | | | [redacted] |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Rental Reimbursement | | | [redacted] |
| See Auto Coverage Schedule | | | |
| Subtotal policy premium | | | [redacted] |
| California Vehicle Assessment Fee | | | [redacted] |
| Fees | | | [redacted] |
| Total 6 month policy premium and fees | | | [redacted] |

Number of Employees: (0-10)

## Important information about fees

You have paid installment fees of $12.00 on this policy. An additional installment fee of $3.00 has been included in each remaining payment. You may reduce the amount you pay in installment fees by paying your premium in larger amounts and fewer installments. Please call your agent for details.

The following additional fees may apply:
Fee for returned checks or refused payments $20.00

## Rated drivers

1. JOSE ALVARADO
2. JOSUE RIVERA
3. JELINA AVILE
4. KAYLEE RENAUD
5. DEVON LEAVITT
6. ZACHARY SALAZAR
7. ZANE TAYLOR
8. KOBE BENTER
9. CODY VONMOOS
10. RICHARD C HERRERA
11. HANNAH E GILLIS
12. MALTAK T LAVIENE

## Auto coverage schedule

1. 2018 Ford T-250 Transit V — Stated Amount: *$23,000 (including Permanently Attached Equip)
VIN: 1FTYR1ZM1JKB32405 — Garaging Zip Code: 95828 — Radius: 300

| | | | | | |
|---|---|---|---|---|---|
| Liability Premium | Liability: [redacted] | UM/UIM BI: [redacted] | Med Pay: [redacted] | | |
| Physical Damage Premium | Comp Deductible: $1,000 | Comp Premium: [redacted] | Coll/Waiver Deductible: $1,000 | Coll/Waiver Premium: [redacted] | |
| Other Coverages Premium | Rental Limit: $50 per day Max $1500 | Rental Premium: [redacted] | | | Auto Total: [redacted] |

2. 2020 Mercedes-Benz Sprinter 2500 — Stated Amount: *$50,000 (including Permanently Attached Equip)
VIN: W1Y4DBHY4LT043637 — Garaging Zip Code: 95828 — Radius: 300

| | | | | | |
|---|---|---|---|---|---|
| Liability Premium | Liability: [redacted] | UM/UIM BI: [redacted] | Med Pay: [redacted] | | |
| Physical Damage Premium | Comp Deductible: $1,000 | Comp Premium: [redacted] | Coll/Waiver Deductible: $1,000 | Coll/Waiver Premium: [redacted] | |
| Other Coverages Premium | Rental Limit: $50 per day Max $1500 | Rental Premium: [redacted] | | | Auto Total: [redacted] |

3. 2021 Mercedes-Benz Sprinter 2500 — Actual Cash Value (plus $2,000.00 Permanently Attached Equip)
VIN: W1Y4EBHY0MT072695 — Garaging Zip Code: 95828 — Radius: 300

| | | | | | |
|---|---|---|---|---|---|
| Liability Premium | Liability: [redacted] | UM/UIM BI: [redacted] | Med Pay: $92 | | |
| Physical Damage Premium | Comp Deductible: $1,000 | Comp Premium: [redacted] | Coll/Waiver Deductible: $1,000 | Coll/Waiver Premium: [redacted] | |
| Other Coverages Premium | Rental Limit: $50 per day Max $1500 | Rental Premium: [redacted] | | | Auto Total: [redacted] |

4. 2010 Toyota Prius — Actual Cash Value (plus $2,000.00 Permanently Attached Equip)
VIN: JTDKN3DU3A0013044 — Garaging Zip Code: 95828 — Radius: 300

| | | | | | |
|---|---|---|---|---|---|
| **Liability Premium** | Liability | UM/UIM BI | | | |
| | [redacted] | [redacted] | | | |
| **Physical Damage Premium** | Comp Deductible | Comp Premium | Coll/Waiver Deductible | Coll/Waiver Premium | Auto Total |
| | $1,000 | [redacted] | $1,000 | [redacted] | [redacted] |

*A vehicle's stated amount should indicate its current retail value, including any special or permanently attached equipment. In the event of a total loss, the maximum amount payable is the lesser of the Stated Amount or Actual Cash Value, less deductible. Be sure to check stated amount at every renewal in order to receive the best value from your Progressive Commercial Auto policy.

## Premium discount

| Policy | |
|---|---|
| 00458105-2 | Package |

## Additional Insured information

1. Additional Insured — CITY BANK
111 WALL ST
NEW YORK, NY 10043

## Company officers

[signature] — President

[signature] — Secretary

Progressive
P.O. Box 94739
Cleveland, OH 44101

PROGRESSIVE COMMERCIAL

May 16, 2023
Policy number: 00458105-1

CALIFORNIA ARTISANAL MEDICINE
20 BLUE SKY COURT
SACREMENTO, CA 95828

Enclosed is the MCP67.

Please retain this copy for your records.

If this endorsement subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, you are required to inform us of all vehicles that are commercially owned or operated by the insured and to list them on your policy. Please review the current policy declaration page and inform us promptly of any additional vehicles that need to be listed. If you acquire (or acquire the services of) any additional commercially owned or operated vehicles in the future, you must promptly notify us of each such additional vehicle. Failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase.

Thank you,
Commercial Auto
Permit Issuance and Verification
1-800-444-4487

Form COVERLTR (06/04)

| MOTOR CARRIER (CA)# |
| --- |
| CA# [illegible] |

# INSURANCE POLICY ENDORSEMENT

## Motor Carriers of Property
## Bodily Injury Liability and Property Damage Liability

| INSURER (INSURANCE COMPANY) NAME AND ADDRESS | NAIC# / SURPLUS LINE BROKER# / OTHER# | Status |
| --- | --- | --- |
| United Financial Cas Co<br>PO BOX 94739<br>CLEVELAND, OH 44101 | NAIC#: 11770<br>SURPLUS LINE BROKER#:<br>OTHER#: | ☒ Licensed to write insurance in the State of California (Admitted Insurer)<br>☐ Nonadmitted Insurer subject to Section 1763 of the California Insurance Code. ______________ SURPLUS LINE BROKER NAME<br>☐ Charitable Risk Pool<br>☐ Risk Retention Group |

| INSURED (MOTOR CARRIER) NAME AND ADDRESS | |
| --- | --- |
| CALIFORNIA ARTISANAL MEDICINE<br>20 BLUE SKY COURT<br>SACREMENTO, CA 95828-0000 | |

| TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | LIMITS | |
| --- | --- | --- | --- | --- |
| PRIMARY LIABILITY<br>☐ Coverage below statutory minimum limits.<br>☒ Coverage equal to or exceeding statutory minimum limits. | CA 00458105-1 | 05/15/2023 | COMBINED SINGLE LIMIT | $750,000 |
| | | | BODILY INJURY OR DEATH (ONE PERSON) | |
| | | | BODILY INJURY OR DEATH (MORE THAN ONE PERSON) | |
| | | | PROPERTY DAMAGE | |
| EXCESS LIABILITY<br>☐ Coverage between primary coverage and statutory minimum limits.<br>☐ Coverage provided at or above statutory minimum limits. | | | COMBINED SINGLE LIMIT | $______ in excess of $_______ |
| | | | BODILY INJURY (ONE PERSON) | $______ in excess of $_______ |
| | | | BODILY INJURY OR DEATH (MORE THAN ONE PERSON) | $______ in excess of $_______ |
| | | | PROPERTY DAMAGE | $______ in excess of $_______ |

This Endorsement shall be attached to and made a part of all policies insuring motor carriers of property required to obtain a permit pursuant to the Motor Carriers of Property Permit Act, commencing with California Vehicle Code section 34600. The purpose of this Endorsement is to assure compliance with the Act and related rules and regulations.

Insurer agrees to each of the following:

- ☐ The coverage provided by the endorsement excludes any costs of defense or other expense that the policy provides.
- ☐ To pay, consistent with the minimum insurance coverage required by California Vehicle Code Section 34631.5, and consistent with the limits it provides herein, any legal liability of insured for bodily injury, death, or property damage arising out of the operation, maintenance, or use of any vehicle(s) for which a motor carrier permit is required, whether or not such vehicle(s) is described in the attached policy.
- ☐ No provision, stipulation, or limitation contained in the attached policy or any endorsement shall relieve insurer from obligations arising out of this Endorsement or the Act, regardless of the insured's financial solvency, indebtedness or bankruptcy.
- ☐ The Certificate of Insurance shall not be canceled on less than thirty (30) days notice from the Insurer to the DMV, written on an authorized Notice of Cancellation form and that the thirty (30) day/period commences to run from the date the Notice of Cancellation was actually received at the office of the California Department of Motor Vehicles, Registration Operations Division, in Sacramento, California.
- ☐ To furnish DMV with a duplicate original of the referenced policy, DMV authorized endorsement, and all other related endorsements and documentation upon request.
- ☐ Except as specified in this endorsement, the terms, conditions, and limitations of this policy remain in full force and effect. This endorsement shall not prevent insurer from seeking reimbursement from insured for any payment made by insurer solely on account of the provisions herein.

Insurer certifies to each of the following:

- ☐ This insurance policy covers all vehicles used in conducting the service performed by the insured for which a motor carrier permit is required whether or not said vehicle(s) is listed in the insurance policy.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| PRINTED NAME OF INSURER'S AUTHORIZED REPRESENTATIVE | TELEPHONE NUMBER | EMAIL ADDRESS (OPTIONAL) |
| --- | --- | --- |
| Kevin Maher | 1-800-444-4487 | CV_FILINGS@PROGRESSIVE.COM |
| SIGNATURE OF INSURER'S AUTHORIZED REPRESENTATIVE | EXECUTED AT (CITY, STATE) | DATE |
| X | MAYFIELD VILLAGE, OH | 05/16/2023 |

MFE INSURANCE
1019 E 4TH PL
LOS ANGELES, CA 90013

PROGRESSIVE COMMERCIAL

Policy number: 00458105-2
Underwritten by:
United Financial Cas Co
Insured:
CALIFORNIA ARTISANAL
June 22, 2023
Policy Period: Jun 20, 2023 - Dec 20, 2023

CALIFORNIA ARTISANAL
MEDICINE, INC
20 BLUE SKY COURT
SACREMENTO, CA 95828

Mailing Address
United Financial Cas Co
PO Box 94739
Cleveland, OH 44101

1-800-444-4487
For customer service, 24 hours a day, 7 days a week

# Additional insured endorsement

Name of Person or Organization

CITY BANK
111 WALL ST
NEW YORK, NY 10043

The person or organization named above is an insured with respect to such liability coverage as is afforded by the policy, but this insurance applies to said insured only as a person liable for the conduct of another insured and then only to the extent of that liability. We also agree with you that insurance provided by this endorsement will be primary for any power unit specifically described on the Declarations Page.

| Limit of Liability | |
|---|---|
| Bodily Injury | Not applicable |
| Property Damage | Not applicable |
| Combined Liability | $750,000 each accident |

All other terms, limits and provisions of this policy remain unchanged.

This endorsement applies to Policy Number: 00458105-2
Issued to (Name of Insured): CALIFORNIA ARTISANAL MEDICINE, INC

Effective date of endorsement: 06/20/2023 Policy expiration date: 12/20/2023

Form 1198 (01/04)

## Rental Reimbursement Coverage Endorsement

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

### Insuring Agreement

Subject to the Limits of Liability, if you pay the premium for Rental Reimbursement Coverage, we will reimburse rental charges incurred when you rent an auto pursuant to a written rental agreement due to a loss to an insured auto that has Rental Reimbursement Coverage under this policy. This coverage applies only if you have purchased Collision Coverage and either Comprehensive Coverage or Fire and Theft With Combined Additional Coverage for that insured auto and the loss is covered under one of those coverages. If neither you nor we can locate a reasonable replacement auto, we will pay you the daily limit instead.

Additional charges for fuel are not covered. We will pay no more than the specified daily limit, including additional insurance, damage waivers, and/or equipment.

The maximum we will pay is the daily amount shown on the declarations page up to the number of days shown on the declarations page.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:

1. When the insured auto cannot be used for its intended purpose due to a loss; or
2. If the insured auto can be operated for its intended purpose, when you deliver the insured auto to an auto repair shop for repairs due to the loss; and ending the earliest of:

1. When the insured auto has been returned to you;
2. When the insured auto has been repaired;
3. When the insured auto has been replaced;
4. 72 hours after we make an offer to settle the loss if the insured auto is deemed by us to be a total loss; or
5. When you incur 30 days worth of rental charges.

You must provide us written proof of your rental charges to be reimbursed.

### Additional Coverage

When Rental Reimbursement Coverage applies, we will consider the rented auto to be an insured auto for coverage under Part II - Damage To Your Auto. The rented auto will have the same coverages that you have purchased for the insured auto that the rented auto replaces, and the same deductible will apply.

### Definition

"Reasonable replacement auto" means an auto of the same type as the insured auto that is out of service, or an auto of a different type that can be used in a manner comparable to the insured auto that will permit you to continue your business operations. This may include the rental of a larger or heavier duty auto if it will allow you to continue to operate your business, if the rental is within the daily rate stated on the declarations page.

### Limits of Liability

The limit shown on the declarations page is the most we will pay under this endorsement for a loss to any one insured auto.

ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form Z311 (02/19)

1781 CA 0219

# CALIFORNIA

## COMMERCIAL AUTO FORMS

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.**
**Provisions of this Agreement and its endorsements restrict coverage. Be certain you understand all of the coverage terms, the exclusions, and your rights and duties.**

**All forms in the endorsement section do not automatically pertain to your policy.**
**Please refer to your declarations page for form numbers associated with your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy. All other parts of the policy that have not been modified by an endorsement will remain unchanged.**

**This booklet contains Form 6912 (02/19) and a section of optional endorsements.**

PROGRESSIVE®
COMMERCIAL

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 24 o

**COMMERCIAL AUTO POLICY**

## INDEX OF POLICY PROVISIONS

**PAGE**

**DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS** . . . . . 1

**GENERAL DEFINITIONS** . . . . . 2

**PART I—LIABILITY TO OTHERS**
Insuring Agreement—Liability To Others . . . . . 6
Additional Definitions Used in This Part Only . . . . . 6
Additional Payments . . . . . 9
Out-Of-State Coverage Extension . . . . . 9
Exclusions . . . . . 10
Limit of Liability . . . . . 13

**PART II—DAMAGE TO YOUR AUTO**
Insuring Agreement—Collision Coverage . . . . . 15
Insuring Agreement—Comprehensive Coverage . . . . . 15
Insuring Agreement—Fire and Theft with Combined Additional Coverage (CAC) . . . . . 16
Additional Coverage . . . . . 16
Additional Payments . . . . . 17
Additional Definitions Used in This Part Only . . . . . 17
Exclusions . . . . . 18
Limit of Liability . . . . . 19
Deductible . . . . . 21
Salvage . . . . . 22
No Benefit to Bailee . . . . . 22
Appraisal . . . . . 22
Payment of Loss . . . . . 23
Loss Payee Agreement . . . . . 23

**GENERAL PROVISIONS** . . . . . 23

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

## DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of **loss we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow **us** to have access to an **insured auto** or other **auto** involved in an **accident** or **loss** and to have it inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

## GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i) snow removal;
      (ii) road maintenance, but not construction or resurfacing;
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described **autos** covered by this policy, and the types of coverage for each specifically described **auto**.

5. "**Employee**" includes a **leased worker** and a statutory employee. **Employee** does not include a **temporary worker**.

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii) **we** insure all **autos** owned by **you** that are used in **your** business;
(iii) no other insurance policy provides coverage for that **auto**; and
(iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
(i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
(ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c. Any replacement **auto** on the date **you** become the owner if:
(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
(ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

7. “**Insured contract**” means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or
   f. That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

   An “**insured contract**” does not include that part of any contract or agreement:
   1. That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
   2. That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
   3. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

8. “**Leased worker**” means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

9. “**Loss**” means sudden, direct and accidental loss or damage.

10. “**Mobile equipment**” means any of the following types of land vehicles, including, but not limited to, any attached machinery or equipment:
    a. Bulldozers, farm implements and machinery, forklifts, and other vehicles designed for use principally off public roads;
    b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as **mobile equipment** under other parts of this definition;

c. Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** reside or **your** business is licensed;
d. Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:
   (i) Power cranes, shovels, loaders, diggers, or drills; or
   (ii) Road construction or resurfacing equipment, such as graders, scrapers or rollers.
e. Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:
   (i) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or
   (ii) Cherry pickers and similar devices used to raise or lower workers.
f. Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.

However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

11. "**Occupying**" means in, on, entering or exiting.

12. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of **private passenger autos** for use by individuals, businesses, or other entities.

13. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

14. "**Private passenger auto**" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

   However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

15. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

16. "**Relative**" means any person residing in the household in which the named insured resides who is related to the named insured by blood, marriage, or

adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

18. "**Temporary worker**" means:
    a. a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions; or
    b. a day laborer.

19. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I—Liability To Others, **insured** means:
    1. **You** with respect to an **insured auto**.

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
   (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
   (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).
   (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
   (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

   For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.
3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B. When used in Part I—Liability To Others, **insured auto** also includes:
1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
2. **Mobile equipment** while being carried or towed by an **insured auto**;
3. Any **temporary substitute auto**; and
4. **Mobile equipment** that is:
   a. owned by **you**;
   b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
   c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

   However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:
   a. used in **your** business;
   b. operated on a public highway; and
   c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

C. When used in Part I—Liability To Others, "**covered pollution cost or expense**" means any cost or expense arising out of:
   1. Any request, demand, order, or statutory or regulatory requirement; or
   2. Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

   **Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:
   a. That are, or that are contained in any property that is:
      (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
      (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
      (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
   b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
   c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

   The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts if:
   (1) The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
   (2) The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

   The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:
   (1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
   (2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

## ADDITIONAL PAYMENTS



In addition to **our** Limit of Liability, **we** will pay for an **insured**:

1. all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest which accrues after the date of **our** payment, written offer, or deposit;

3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4. up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5. reasonable expenses incurred by an **insured** at **our** request, including loss of earnings up to $250 a day; and

6. all court costs taxed against the **insured** in any “suit” against the **insured** we defend. However, these payments do not include attorneys’ fees or attorneys’ expenses taxed against the **insured**.

## OUT-OF-STATE COVERAGE EXTENSION

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the Limits of Liability under this policy.

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**
   Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**
   An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**
   **Bodily injury** to:
   a. An **employee** of any **insured** arising out of or within the course of:
      (i) That **employee's** employment by any **insured**; or
      (ii) Performing duties related to the conduct of any **insured's** business; or
   b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

   This exclusion applies:
   a. Whether the **insured** may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. **Fellow Employee**
   **Bodily injury** to:
   a. a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
   b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

7. **Care, Custody or Control**
   **Property damage** to, towing or removal expense for, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**
   **Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**
   **Bodily injury** or **property damage** resulting from or caused by the handling of property:
   a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
   b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**
    **Bodily injury** or **property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:
    a. That are, or that are contained in any property that is:
       (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
       (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
       (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;

b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts if:
(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
(2) The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:
(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the maintenance or use of an **insured auto**; and
(2) The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

11. **Racing**
**Bodily injury** or **property damage** arising out of **you** or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

12. **War**
**Bodily injury** or **property damage** arising directly or indirectly out of:
a. War, including undeclared or civil war;
b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. **Operations**
**Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:
a. any equipment listed in Paragraphs b. and c. of the definition of **auto**; or

b. machinery or equipment that is on, attached to, or part of, a land vehicle that meets the definition of **mobile equipment**.

14. **Completed Operations**
**Bodily injury** or **property damage** arising out of, or caused by, **your** work after that work has been completed or abandoned.

For purposes of this exclusion, **your** work means:
a. Work or operations performed by **you** or on **your** behalf;
b. Materials, parts, or equipment furnished in connection with such work or operations; and
c. The delivery of liquids.

**Your** work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraphs a., b., or c. above.

**Your** work will be deemed completed at the earliest of the following times:
a. When all of the work called for in **your** contract has been completed.
b. When all of the work to be done at a particular site has been completed if **your** contract calls for work at more than one site.
c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

15. **Criminal Acts**
**Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

16. **Vehicle Sharing—Private Passenger Autos**
**Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
1. the number of premiums paid;
2. the number of **insured autos** or trailers shown on the **declarations page**;

3. the number of policies issued by **us**;
4. the number of vehicles or **insureds** involved in an **accident**; or
5. the number of claims or lawsuits arising out of an **accident**;

subject to the following:

1. **Coverage Required by Filings**

If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:
(i) **we** are required to pay any judgment entered against **you**; or
(ii) **we** agree to settle a claim or lawsuit;
for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

2. **Combined Bodily Injury and Property Damage Limits**

Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

3. **Separate Bodily Injury Liability and Property Damage Liability Limits**

Subject to the terms of Section 1 above, if **your declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:

a. The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.
b. Subject to the **bodily injury** liability limit for "each person", the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for

**bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

c. The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one **auto** with respect to **our** Limit of Liability.

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:

a. is a **trailer** specifically described on the **declarations page**; and
b. is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;

the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the **declarations page**.

Any amount payable under Part I—Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

## PART II—DAMAGE TO YOUR AUTO

### INSURING AGREEMENT—COLLISION COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** when it collides with another object or overturns.

### INSURING AGREEMENT—COMPREHENSIVE COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** from any cause other than those covered under Collision Coverage.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

**INSURING AGREEMENT—FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)**

Subject to the Limits of Liability, if **you** pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** caused by:

1. fire, lightning or explosion;
2. theft;
3. windstorm or hail;
4. earthquake;
5. flood or rising water;
6. malicious mischief or vandalism;
7. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which **your insured auto** is being transported; or
8. collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

**ADDITIONAL COVERAGE**

1. **Transportation Expenses**

   **We** will pay up to $30 per day, up to a maximum of $900, for temporary transportation expenses incurred by **you** because of the theft of an **insured auto** that is a **private passenger auto**. This coverage applies only to those **insured autos** for which **you** carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after **you** report the theft to **us**, and ending when the **insured auto** is returned to use, or **we** pay for its **loss**.

2. **Coverage for Temporary Substitute Autos**

   If a **temporary substitute auto** is involved in a **loss**, **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the Actual Cash Value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

3. **Pet Injury Coverage**

If **you** have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in **your** policy.

**Insuring Agreement**

If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:

1. for reasonable and customary veterinary fees incurred by **you** or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
2. a death benefit if the **pet** dies in, or as a direct result of, the covered **loss**.

In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

**Limits of Liability**

The following additional Limits of Liability apply to Pet Injury Coverage:

1. The most **we** will pay for all damages in any one **loss** is a total of $1,000 regardless of the number of **pets** involved.
2. If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for the **pet**.
3. No deductible shall apply to this coverage.

**ADDITIONAL PAYMENTS**

If **you** have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of Liability, **we** will pay:

1. All reasonable expenses necessary to return a stolen **insured auto** to **you**, unless **we** determine the **auto** to be a total loss.
2. All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

When used in Part II—Damage To Your Auto:

1. "**Finance agreement**" means a written lease or loan contract, entered into as a part of **your** business, pertaining to the lease or purchase by **you** of an

**insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with a purchase or lease of the **insured auto** that is commensurate with fair market value.

2. “**Permanently attached equipment**” or **PAE** means equipment and devices that are permanently installed or attached to **your insured auto**. **Permanently attached equipment** also includes:
   a. accessories designed to work as part of the equipment or devices;
   b. load securing equipment and devices; and
   c. custom paint or decals.

3. “**Pet**” means a dog or cat occupying an **insured auto** with **your** express or implied consent.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II—DAMAGE TO YOUR AUTO.**

1. **We** will not pay for loss caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   a. **War or Military Action**
      (1) war, including undeclared or civil war;
      (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
      (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   b. **Nuclear Hazard**
      (1) the explosion of any weapon employing atomic fission or fusion; or
      (2) nuclear reaction or radiation, or radioactive contamination, however caused.

2. **We** will not pay for **loss** to any sound equipment, video equipment, or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, compact discs, DVDs, or similar items used with sound or video equipment.

3. **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4. **We** will not pay for **loss** due and confined to:
   a. wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.

b. blowouts, punctures, flat spots, or other road damage to tires.

But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5. **We** will not pay for **loss** incurred while **your insured auto** is used in any illicit trade or transportation, or due to **your insured auto's** destruction or confiscation by governmental or civil authorities because **you**, or, if **you** are a natural person, any **relative**, engaged in illegal activities.

6. **We** will not pay for **loss** caused by **you** or an insured participating in or preparing for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7. **We** will not pay for **loss** to an **insured auto** for diminution of value.

8. If **we** pay **your** financial obligation under a **finance agreement**, **we** will not pay:
   a. Overdue **finance agreement** payments including any type of late fees or penalties;
   b. Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;
   c. Security deposits not normally refunded by the lessor or lender;
   d. Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by **you**;
   e. Carryover balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or
   f. Unpaid principal included in the outstanding **finance agreement** balance that was not used by **you** to purchase the **insured auto**.

9. **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

## LIMIT OF LIABILITY

1. If the **declarations page** shows actual cash value for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:
   a. the actual cash value of the stolen or damaged property at the time of **loss**;
   b. the amount necessary to replace the stolen or damaged property with other of like kind and quality; or
   c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.

**Permanently attached equipment** (**PAE**) is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged **PAE** to another **insured auto**, but will not increase the **PAE** limit shown on the **declarations page**.

2. If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:
   a. the actual cash value of the stolen or damaged property at the time of **loss**;
   b. the amount necessary to replace the stolen or damaged property with other of like kind and quality;
   c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair, the **insured auto**; or
   d. the applicable Stated Amount of the property as shown on the **declarations page**.

   However, if there is a **finance agreement** in place for the **insured auto**, the most **we** will pay for a total loss where the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss** is:
   a. greater than the actual cash value of the **insured auto** at the time of **loss**; and
   b. the Stated Amount shown on the **declarations page** is greater than the actual cash value of the **insured auto** at the time of **loss**;

   is the lesser of:
   a. the applicable Stated Amount of the **insured auto** as shown on the **declarations page**; or
   b. the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss**.

   **PAE** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page.** The transfer of undamaged **PAE** to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3. Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:
   a. in determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:
      (i) shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or

replacement parts and equipment, as reasonably determined by **us**; and

(ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

(a) original manufacturer parts or equipment; and

(b) non-original manufacturer parts or equipment;

b. the actual cash value is determined by the market value, age and condition of the **auto** at the time the **loss** occurs; and

c. duplicate recovery for the same elements of damages is not permitted.

4. To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:

a. the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the **accident** and that is eliminated as a result of the repair or replacement of property damaged in the **loss**. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges, and peeling paint;

b. an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts (parts that wear out over time and have a useful life typically shorter than the life of the **auto** as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the **accident**, which **we** deem necessary to replace in the course of repair; and

c. an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if **we** replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, **our** payment for the battery is reduced by 40 percent and **you** are responsible to pay that 40 percent portion of the cost of the battery.

**DEDUCTIBLE**

For each **loss** that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the **declarations page** for the **insured auto** will be applied. A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to this policy, only one deductible will apply to the entire **loss** event.

If **your insured auto** is an additional **auto** that **you** have requested to be added to **your** policy within 30 days of **your** acquisition of the **auto**, and no deductible has been designated for the additional **auto** prior to the **loss**, then:

1. when the **insured auto** is a **private passenger auto**, **we** will apply the lowest deductible listed for any one **auto** listed on the **declarations page**; or
2. when the **insured auto** is an **auto** other than a **private passenger auto**, **we** will apply the highest deductible listed for any one **auto** listed on the **declarations page**.

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **insured auto** to **you**.

## SALVAGE

If **we** pay the actual cash value of **your insured auto** less the deductible, or if **we** pay the amount necessary to replace **your insured auto** less the deductible, **we** are entitled to all salvage. If **your insured auto** is a total loss and **we** pay the applicable Limit of Liability or Stated Amount as shown on the **declarations page** less the deductible, **we** are entitled to the same percent of salvage as **our** payment bears to the actual cash value of **your insured auto**.

## NO BENEFIT TO BAILEE

No bailee or carrier shall benefit, directly or indirectly, from this Part II—Damage To Your Auto.

## APPRAISAL

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree on the amount of the **loss** within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. All other expenses of the

appraisal, including payment of the umpire if one is necessary, will be shared equally by **you** and **us**.

By agreeing to an appraisal, **we** do not waive any of **our** rights under any other part of this policy, including **our** right to deny the claim.

**PAYMENT OF LOSS**

At **our** option, **we** may pay the **loss** in money, or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **declarations page**, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** either to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this policy.

**You** must convey title to and possession of the damaged, destroyed, or stolen property to **us** if **we** pay the actual cash value of **your insured auto** less the deductible or if **we** pay the amount necessary to replace **your insured auto** less the deductible.

**LOSS PAYEE AGREEMENT**

**We** will pay the Loss Payee named in the policy for **loss** to **your insured auto**, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless:
1. the **loss** results from fraudulent acts or omissions on **your** part; or
2. the **loss** is otherwise not covered under the terms of this policy.

Cancellation, nonrenewal, termination, or voiding ends this agreement as to the Loss Payee's interest.

If **we** make any payment to the Loss Payee, **we** will obtain the Loss Payee's rights against any other party.

## GENERAL PROVISIONS

1. **Policy Period and Territory**

   This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

2. **Policy Changes**



This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:

a. the number, type, or use classification of **insured autos**;
b. operators using **insured autos**, their ages, driving histories, license status, state or country of license issuance, or marital status;
c. the place of principal garaging of any **insured auto**;
d. coverage, deductibles, or limits of liability; or
e. rating territory or discount eligibility.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

Nothing contained in this section will limit **our** right to void this policy for fraud, misrepresentation or concealment of any material fact by **you**, or anyone acting on **your** behalf.

3. **Other Insurance**

a. For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** that is specifically described on the **declarations page** is a **trailer**, this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent, unless the **trailer** is attached to an **insured auto** that is a power unit **you** own and that is specifically described on the **declarations page**.

b. If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** pro-

portionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. **Two or More Policies Issued By Us**

   If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

5. **Legal Action Against Us**

   **We** may not be sued unless there is full compliance with all the terms of this policy.

   **We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6. **Our Recovery Rights**

   In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm **our** rights.

   When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

   In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

   Interest in this policy may not be assigned without **our** written consent. If the policyholder named on the **declarations page** is a natural person and that person dies, the policy will cover:
   a. any other named insured on the policy;

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and
c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:
1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:
1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;

2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

12. **Liberalization**

If **we** make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

13. **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

14. **Settlement of Claims**

**We** may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

15. **Automatic Termination**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at

the end of the current policy period at 12:01 a.m. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date and at the effective time of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

16. **Duty to Report Changes**

**You** must promptly notify **us** when:
1. **your** mailing or business address changes;
2. the principal garaging address of an **insured auto** changes;
3. there is any change with respect to the persons who operate an **insured auto**;
4. there is a change in the driver's license status, or state or country of license issuance, of any person using an **insured auto**; or
5. **you** acquire, sell, or dispose of **autos**.

17. **Terms of Policy Conformed to Statutes**

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location.

Form 6912 (02/19)

Case 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 53 of 93

## INDEX OF ENDORSEMENTS

**All forms appearing in this endorsement section do not automatically pertain to your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy.**

**Form No./Description** **Page**

1797 (02/19)
**Contingent Liability Endorsement—Limited Liability Coverage For Non-Trucking Use Of An Automobile** . . . . 31

1890 (02/19)
**Employer's Non-Ownership Liability Endorsement** . . . . 31

1891 (02/19)
**Hired Auto Coverage Endorsement** . . . . 33

2366 (02/11)
**Blanket Additional Insured Endorsement** . . . . 34

2367 (06/10)
**Blanket Waiver of Subrogation Endorsement** . . . . 34

2368 (06/10)
**Loan/Lease Gap Coverage Endorsement** . . . . 35

2852 CA (02/19)
**Uninsured/Underinsured Motorist Bodily Injury Coverage Endorsement** . . . . 36

4717 (02/19)
**Trailer Interchange Coverage Endorsement** . . . . 41

4757 (02/19)
**Medical Payments Coverage Endorsement** . . . . 43

4759 CA (02/19)
**Uninsured Motorist Property Damage Coverage Endorsement** . . . . 46

4852 CA (02/19)
**Cancellation and Nonrenewal Endorsement** . . . . 50

4881 CA (02/19)
**California Amendatory Endorsement** . . . . 52

5701 (02/19)
**Individual Named Insured Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . 53

Z228 (01/11)
**Mobile Equipment As Insured Autos Endorsement** . . . . . . . . . . . . . . . . . . . . 55

Z438 (02/19)
**Garage Operations Physical Damage Legal Liability Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Z439 (02/19)
**Non-Owned Trailer Physical Damage Coverage Endorsement** . . . . . . . . . . 63

Z442 (02/19)
**Any Automobile Legal Liability Coverage Endorsement** . . . . . . . . . . . . . . 65

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 55 o

**CONTINGENT LIABILITY ENDORSEMENT—LIMITED LIABILITY COVERAGE FOR NON-TRUCKING USE OF AN AUTOMOBILE**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**PART I—LIABILITY TO OTHERS**

A. Under the Additional Definitions Used In This Part Only section:

Subsection A.3. is deleted and replaced by the following:

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. However, **insured** does not include anyone engaged in the business of transporting property by auto for hire that is liable for **your** conduct.

B. Under the Exclusions of Part I, the following exclusion is added:

**Trucking Use**
Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:

a. To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
b. In any business or for any business purpose.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 1890 (02/19)

**EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

**CHANGES TO PART I—LIABILITY TO OTHERS**

The definition of **insured auto** is modified to include a **non-owned auto** when used in connection with **your** business by **you** or any of **your employees**. The definition of **insured** does not include the owner of a **non-owned auto**.

**EXCLUSIONS**

The insurance provided by this endorsement does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which **you** are a partner or member and which is not shown as the named insured on the **declarations page**.

**OTHER INSURANCE**

The insurance provided by this endorsement is excess over any other valid and collectible insurance.

**PREMIUM AGREEMENT**

**We** may audit the number of employees and charge appropriately for additional premium up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

## HIRED AUTO COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### Additional definitions used in this endorsement

If **you** pay a premium for this Hired Auto Coverage, then the following definitions are added:

1. "**Hired auto**" means an **auto**:
   a. **you** lease, hire, rent or borrow; or
   b. **your employee** leases, hires or rents:
      i. under a contract in that individual **employee's** name;
      ii. at **your** direction and with **your** express permission; and
      iii. only while being used in the conduct of **your** business.

   This does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.
2. "**Cost of hire**" means the total amount paid by **you** for the hire of **autos**.

### Changes to Part I—Liability To Others

When used in Part I—Liability To Others, the definition of **insured auto** is amended to include **hired auto**.

### Other Insurance

The insurance provided by this Hired Auto Coverage endorsement is excess over any other valid and collectible insurance, whether primary, excess, or contingent.

### Premium agreement

The premium for this Hired Auto Coverage is based on the **cost of hire**, and is subject to a minimum **cost of hire**. **We** may audit the **cost of hire** and charge appropriately for additional premium for up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Case 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 58 of 93

## BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Additional Insured Endorsement, **we** agree with **you** that any person or organization with whom **you** have executed a written agreement prior to any **loss** is added as an additional **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to such additional **insured** only as a person or organization liable for **your** operations and then only to the extent of that liability. This endorsement does not apply to acts, omissions, products, work, or operations of the additional **insured**.

Regardless of the provisions of paragraph a. and b. of the "Other Insurance" clause of this policy, if the person or organization with whom **you** have executed a written agreement has other insurance under which it is the first named **insured** and that insurance also applies, then this insurance is primary to and non-contributory with that other insurance when the written contract or agreement between **you** and that person or organization, signed and executed by **you** before the **bodily injury** or **property damage** occurs and in effect during the policy period, requires this insurance to be primary and non-contributory.

In no way does this endorsement waive the "Other Insurance" clause of the policy, nor make this policy primary to third parties hired by the **insured** to perform work for the **insured** or on the **insured's** behalf.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2367 (06/10)

## BLANKET WAIVER OF SUBROGATION ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 59 o

If **you** pay the fee for this Blanket Waiver of Subrogation Endorsement, **we** agree to waive any and all subrogation claims against any person or organization with whom a written waiver agreement has been executed by the named insured, as required by written contract, prior to the occurrence of any **loss**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 2368 (06/10)

## LOAN/LEASE GAP COVERAGE ENDORSEMENT

---

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE**

If **you** pay the premium for this coverage, and the **insured auto** for which this coverage was purchased is deemed by **us** to be a **total loss**, **we** will pay, in addition to any amounts otherwise payable under Part II of **your** policy, the difference between:

1. the actual cash value of the **insured auto** at the time of the **total loss**; and
2. any greater amount the owner of the **insured auto** is legally obligated to pay under a written loan or lease agreement to which the **insured auto** is subject at the time of the **total loss**, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **insured auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **insured auto** and the loss is covered under one of those coverages.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 60 o

## UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Bodily Injury Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** or **underinsured auto** because of **bodily injury**:

1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto** or **underinsured auto**.

**We** will pay for damages an **insured** is entitled to recover from the **owner** or operator of an **underinsured auto** only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an **owner** or operator of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

1. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i) **you** or a **relative**;
      (ii) any person **occupying your insured auto** or a **temporary substitute auto**; and
      (iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or
   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:

(i) any person **occupying your insured auto** or a **temporary substitute auto**; and
(ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

For purposes of this definition, **insured auto** includes **mobile equipment** that is:

a. owned by **you**;
b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:

(i) used in **your** business;
(ii) operated on a public highway; and
(iii) operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative**.
3. "**Owned**" means the person or organization:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.
4. "**Owner**" means the person or organization who, with respect to a vehicle:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.
5. "**Underinsured auto**" means an **auto** or trailer to which a bodily injury liability bond, policy, cash deposit, or self-insurance certificate applies at the time of the **accident**, but the sum of all such bonds, policies, deposits or self-insurance is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the **declarations page**.

   An "**underinsured auto**" does not include any motorized **auto** or equipment:
   a. **owned** by **you** or, if the named insured is a natural person, a **relative**. However, this does not apply if an **auto owned** by **you** or a **relative** causes **bodily injury** to an **insured** while being operated, or caused to be operated, by a person without the consent of the injured **insured** and in connection with criminal activity, if that criminal activity is documented in a police report and the injured **insured** is not a party to the criminal activity;

b. **owned** by any governmental unit or agency;
c. designed mainly for use off public roads, while not on public roads;
d. while used as a residence or premises; or
e. expressly identified by make, model and serial number on the **declarations page** of this policy.

6 "**Uninsured auto**" means an **auto** or trailer of any type:
a. to which no bodily injury liability bond or policy applies at the time of the **accident**;
b. to which a bodily injury liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
   (i) denies coverage;
   (ii) refuses to admit coverage except conditionally or under a reservation of rights; or
   (iii) is insolvent, or becomes so within one year of the **accident**;
c. that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes **bodily injury** by striking:
   (i) an **insured auto** or **temporary substitute auto**; or
   (ii) if the named insured is a natural person:
      (a) **you** or a **relative**; or
      (b) a motor vehicle that an **insured** is occupying,

   provided that the **insured** or someone on his or her behalf:
   (i) reports the **accident** to the police or civil authority within 24 hours or as soon as practicable after the **accident**; and
   (ii) provides **us**, within 30 days of the **accident**, a statement under oath that the **insured** or his or her legal representative has a cause of action against the **owner** or operator of an **auto** who cannot be identified. The statement must set forth facts supporting the claim; or
d. that is used without the permission of the **owner** thereof if there is no bodily injury liability insurance or bond applicable at the time of the **accident** with respect to the **owner** or operator thereof.

An "**uninsured auto**" does not include any motorized **auto** or equipment:
a. **owned** or operated by **you** or, if the named insured is a natural person, a **relative**. However, this does not apply if an **auto owned** by **you** or, if the named insured is a natural person, a **relative**, causes **bodily injury** to an **insured** while being operated, or caused to be operated, by a person without the consent of the injured **insured** and in connection with criminal activity, if that criminal activity is documented in a police report and the injured **insured** is not a party to the criminal activity;
b. **owned** or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;
c. **owned** by any governmental unit or agency;
d. designed mainly for use off public roads, while not on public roads;
e. while being used as a residence or premises; or
f. that is an **insured auto** expressly identified by make, model and serial number on the **declarations page** of this policy.

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 63 o

**<u>EXCLUSIONS</u>—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

1. Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying**:
   a. an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;
   b. a **non-owned auto** without the express or implied permission of the **owner**; or
   c. an **auto** or device of any type designed to be operated on the public roads that is **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**, other than an **insured auto** or **temporary substitute auto**.
2. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law.
3. to any punitive or exemplary damages.
4. to **bodily injury** sustained by any person while using or **occupying** a motor vehicle operated by a person excluded from coverage under this policy under a Named Driver Exclusion Election.
5. to **bodily injury** sustained by any person while **occupying** a motor vehicle, other than an **insured auto**, if the **owner** has insurance similar to that provided under this endorsement.

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Uninsured/Underinsured Motorist Coverage on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person; and
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**.

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 64 o

The “each person” limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The Limits of Liability under this endorsement shall be reduced by all sums:

1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2. paid, and the present value of all amounts payable, because of **bodily injury** under workers’ compensation law.

The damages that an **insured** is entitled to recover under this endorsement shall be reduced by all sums paid or payable under any valid and collectible automobile medical payment insurance available to the **insured** including, but not limited to, all sums paid or payable under any Medical Payments Coverage endorsement available under this policy.

Any payment made to a person under this endorsement shall reduce any amount that the person is entitled to recover under Part I—Liability To Others.

No one will be entitled to duplicate payments for the same elements of damages.

Any judgment or settlement for damages against an operator or **owner** of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## OTHER INSURANCE

When the named insured is a natural person, if there is other applicable uninsured or underinsured motorist coverage, the damages that an **insured** is entitled to recover under this endorsement shall be deemed not to exceed the highest limit of any applicable coverage. **We** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide shall be excess over any other uninsured or underinsured motorist coverage, except for **bodily injury** to **you** or a **relative** when **occupying** an **insured auto**.

When the named insured is a corporation, partnership, organization or any other entity that is not a natural person, if there is other applicable uninsured or underinsured motorist coverage, the damages that an **insured** is entitled to recover under this endorsement shall be deemed not to exceed the highest limit of any applicable coverage. **We** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide for the occupant of an **insured auto** shall be excess over any other uninsured or underinsured motorist coverage.

**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

**ARBITRATION**

If **we** and an **insured** cannot agree on:
1. the legal liability of the operator or **owner** of an **uninsured auto** or **underinsured auto**; or
2. the amount of the damages sustained by the **insured**;

this will be determined by arbitration. If the **accident** involves an **uninsured auto**, any demand for arbitration must be made within two years of the date of the **accident**. If the **accident** involves an **underinsured auto**, the demand must be made after all applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements and prior to the expiration of the bodily injury statute of limitations in the state in which the **accident** occurred. An **insured** demanding arbitration must send written notice to **us**, or **our** agent for process, by certified mail, return receipt requested.

Arbitration shall be conducted by a single neutral arbitrator.

The costs and fees of the arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** resides. Local rules of procedure and evidence will apply.

A decision by the arbitrator will be binding with respect to a determination of:
1. the legal liability of the operator or **owner** of an **uninsured auto** or an **underinsured auto**; and
2. the amount of the damages sustained by the **insured**.

The arbitrator shall have no authority to award an amount in excess of the limit of liability.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 4717 (02/19)

## TRAILER INTERCHANGE COVERAGE ENDORSEMENT

---

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Trailer Interchange Coverage, **we** will pay damages for **property damage** for which **you** become legally re-

sponsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession. The **trailer** must be in **your** possession under a written trailer or equipment interchange agreement in which **you** assume liability for **loss** to the **trailer** while in **your** possession.

**We** will pay for a **loss** to the **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:

a. Collision Coverage. For **loss** caused by:
   - (i) The **trailer's** collision with another object; or
   - (ii) The **trailer's** overturn.

b. Comprehensive Coverage. For any **loss** except one caused by:
   - (i) The **trailer's** collision with another object; or
   - (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

## ADDITIONAL DEFINITION

"**Trailer**", when used in this endorsement, includes a shipping container.

## ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;

b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

c. the premiums on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;

e. all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and

f. all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

## EXCLUSIONS

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or

in any sequence to the **loss**.



(i) Nuclear Hazard.
    (1) The explosion of any weapon employing atomic fission or fusion; or
    (2) Nuclear reaction or radiation, or radioactive contamination, however caused.
(ii) War or Military Action.
    (1) War, including undeclared or civil war;
    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents; or
    (3) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.

b. **We** will not pay for loss of use.

c. **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;
    (i) Wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion; or
    (ii) Blowouts, punctures, or other road damage to tires.

**LIMIT OF INSURANCE AND DEDUCTIBLE**

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:

a. The actual cash value of the damaged or stolen property at the time of the **loss**;
b. The amount necessary to replace the stolen or damaged property with other of like kind and quality;
c. The amount necessary to repair the damaged property to its pre-loss condition; or
d. The applicable Limit of Liability for the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event. No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **trailer** to **you**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 4757 (02/19)

## MEDICAL PAYMENTS COVERAGE ENDORSEMENT

---

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Medical Payments Coverage, **we** will pay the **usual and customary charge** for reasonable and necessary expenses, incurred within three years from the date of an **accident**, for medical and funeral services because of **bodily injury**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance or use of a motor vehicle or **trailer**.

Any dispute as to the **usual and customary charge** will be resolved between the service provider and **us**.

## ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:
    a. if the named insured shown on the **declarations page** is a natural person:
        (i) **you** while **occupying** any **auto**, other than an **auto owned** by **you** which is not an **insured auto**;
        (ii) a **relative** while **occupying** an **insured auto**, **temporary substitute auto**, or **non-owned auto**;
        (iii) **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not **occupying** a motor vehicle; and
        (iv) any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**; or
    b. if the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.
    For purposes of this definition, **insured auto** includes **mobile equipment** that is:
        (i) owned by **you**;
        (ii) leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
        (iii) not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.
    However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:
        (i) used in **your** business;
        (ii) operated on a public highway; and
        (iii) operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or a **relative**.
3. "**Owned**" means the person or organization:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.
4. "**Owner**" means the person or organization who, with respect to a vehicle:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.
5. "**Usual and customary charge**" means an amount which **we** determine represents a customary charge for services in the geographical area in which the service is rendered. **We** shall determine the usual and customary charge through the use of independent sources of **our** choice.

**<u>EXCLUSIONS</u>—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under this endorsement does not apply to **bodily injury**:

1. sustained while **occupying** any **auto** or **trailer** while being used as a residence or premises;
2. occurring during the course of employment if workers' compensation coverage should apply;
3. arising out of an **accident** involving an **auto** or **trailer** while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**;
4. resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;
5. due to a nuclear reaction or radiation;
6. for which insurance is afforded under a nuclear energy liability insurance contract;
7. for which the United States Government is liable under the Federal Tort Claims Act;
8. sustained by any person while **occupying** an **insured auto**, **temporary substitute auto**, or **trailer** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;
9. sustained by any person while **occupying** a **non-owned auto** without the express or implied permission of the **owner**;
10. that is intentionally inflicted on an **insured** at that person's request or self-inflicted; or

11. sustained while **occupying** any vehicle that has less than four wheels or is not designed for operation principally upon public roads.

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers** shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Medical Payments Coverage on the **declarations page**.

Any amount payable to an **insured** under this endorsement will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or any applicable Uninsured/Underinsured Motorist Coverage Endorsement.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

**OTHER INSURANCE**

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the medical and funeral services. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured occupying**:
1. an **auto**, other than an **insured auto** or **temporary substitute auto**; or
2. a **trailer**, other than a **trailer** while connected to an **insured auto**;

will be excess over any other **auto** or **trailer** insurance providing payments for medical or funeral expenses.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 4759 CA (02/19)

## UNINSURED MOTORIST
## PROPERTY DAMAGE COVERAGE ENDORSEMENT

---

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for **property damage** caused by the owner or operator of an **uninsured auto** that:
1. is caused by an **accident**; and
2. arises out of the ownership, maintenance or use of an **uninsured auto**.

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 71 o

## INSURING AGREEMENT—UNINSURED MOTORIST COLLISION DEDUCTIBLE WAIVER COVERAGE

If **you** pay both the premium for this coverage and the premium for Collision Coverage under Part IV—Damage To Your Auto for the same **covered auto**, **we** will pay your Collision Coverage deductible for that **insured auto** if involved in an accident that:

1. is caused by the owner or operator of an **uninsured motor vehicle**; and
2. arises out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

**We** will pay for replacement of a child passenger restraint system meeting applicable federal motor vehicle safety standards that was damaged in, or being used by a child in an **insured auto** at the time of, an **accident** for which Uninsured Motorist Property Damage Coverage applies due to the liability of the owner or operator of an **uninsured motor vehicle**.

The owner or operator of the **uninsured auto** must be identified or the **uninsured auto** must be identified by its license number. **You** or someone on **your** behalf must notify **us**, or one of **our** agents or brokers, of any **accident** resulting in **property damage** within 10 business days from the date of the **accident**.

Any judgment or settlement for damages against an owner or operator of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this endorsement:

1. "**Property damage**" means physical damage to, or destruction of, an **insured auto** caused by actual, direct physical contact with an **uninsured auto**. It does not include loss of use of the **insured auto**.
2. "**Uninsured auto**" means a land motor vehicle or trailer of any type:
    a. to which no **property damage** liability bond or policy applies at the time of the **accident**;
    b. to which a **property damage** liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
        (i) denies coverage;
        (ii) refuses to admit coverage except conditionally or under a reservation of rights; or
        (iii) is insolvent, or becomes so within one year of the **accident**; or
    c. that is used without the owner's permission if there is no property damage liability insurance or bond applicable at the time of the **accident** with respect to the owner or operator of the vehicle.

    An "**uninsured auto**" does not include any vehicle or equipment:
    a. owned or operated by **you** or, if the named insured is a natural person, a **relative**, or furnished or available for the regular use of **you** or a **relative**;

b. owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent;
c. owned by any governmental unit or agency;
d. operated on rails or crawler treads;
e. designed mainly for use off public roads, while not on public roads;
f. while located for use as a residence or premises;
g. expressly identified by make, model and serial number on the **declarations page** of this policy; or
h. that has at least the minimum property damage liability limits required by Vehicle Code § 16056, even if the property damage liability limits are not sufficient to compensate for all **property damage** caused by the owner or operator of the vehicle.

**<u>EXCLUSIONS</u>—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under this endorsement will not apply:
1. to any punitive or exemplary damages;
2. to **property damage** to a motor vehicle operated by a person excluded from coverage under this policy under a Named Driver Exclusion Election;
3. to **property damage** to a **trailer**;
4. to **property damage** if there is no actual, direct physical contact between the **uninsured auto** and the **insured auto**; or
5. to **property damage** unless the owner or operator of the **uninsured auto**, or the license plate number of the **uninsured auto**, can be identified.

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Uninsured Motorist Property Damage Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **insured autos**;
3. lawsuits brought;
4. vehicles involved in the **accident**; or
5. premiums paid.

The amount shown on the **declarations page** for "property damage" is the most **we** will pay for the aggregate of all **property damage** caused by any one **accident**.

**Our** Limit of Liability under this endorsement for **property damage** to an **insured auto** arising out of one **accident** is the lowest of:
1. the actual cash value of the **insured auto** at the time of the **accident**;
2. the amount necessary to replace the **insured auto**;
3. the amount necessary to repair the **insured auto** to its pre-loss condition;
4. any Limit of Liability shown on the **declarations page** for "property damage" under this endorsement; or

5. the amount of the deductible for Collision Coverage shown on the **declarations page**. This subpart only applies if **you** have paid the premium for Collision Coverage under Part II—Damage To Your Auto.

**Our** Limit of Liability for Uninsured Motorist Collision Deductible Waiver Coverage under this endorsement for **property damage** to an **insured auto** arising out of any one **accident** is the lower of:

1. the amount of the loss; or
2. the amount of the Collision Coverage deductible shown on the **declarations page** for the **covered auto** that is involved in the **accident**.

Payments for **property damage** under this endorsement are subject to an adjustment for depreciation and physical condition; such adjustment will be made in determining the Limit of Liability at the time of the **accident**.

No one will be entitled to duplicate payments for the same elements of damages.

**OTHER INSURANCE**

If there is other applicable uninsured motorist property damage coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits.

**ARBITRATION**

If **we** and an **insured** cannot agree on:

1. the legal liability of the operator or owner of an **uninsured auto** or **underinsured auto**; or
2. the amount of the **property damage** sustained by the **insured**;

this will be determined by arbitration. Any demand for arbitration must be made within one year from the date of the **accident**.

Arbitration shall be conducted by a single neutral arbitrator. The costs and fees of the arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** resides. Local rules of procedure and evidence will apply.

A decision by the arbitrator will be binding with respect to a determination of:

1. the legal liability of the operator or owner of an **uninsured auto**; and
2. the amount of the **property damage** sustained by the **insured**.

The arbitrator will have no authority to award an amount in excess of the limit of liability.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

**CANCELLATION AND NONRENEWAL ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with you that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**CANCELLATION**

**You** may cancel this policy by calling or writing **us** and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records. If this policy has been in effect for 60 days or less and is not a renewal of a policy **we** issued, notice of cancellation will be mailed at least 20 days before the effective date of cancellation if **we** cancel for:

a. nonpayment of premium; or
b. discovery of fraud or material misrepresentation by the insured or his or her agent when obtaining this insurance or when making and pursuing a claim under this policy.

Notice of cancellation due to any other reason will be mailed at least 40 days before the effective date of cancellation.

After this policy is in effect for more than 60 days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

1. nonpayment of premium, including payment due on a prior policy **we** issued and due during the current policy period covering the same risks;
2. a judgment by a court or administrative tribunal that the insured has violated a California state law or law of the United States having as one of its necessary elements an act which materially increases any of the risks **we** insure against;
3. discovery of fraud or material misrepresentation by the insured or his or her agent when obtaining this insurance or making and pursuing a claim under this policy;
4. discovery of willful or grossly negligent acts or omissions, or any violations of state laws or regulations establishing safety standards, by the insured or his or her agent, which materially increase any of the risks **we** insure against;
5. failure by the insured or his or her agents to implement reasonable loss control requirements the insured agreed to as a condition of policy issuance, or which were conditions precedent to **our** use of a particular rate or rating plan, if that failure materially increases any of the risks **we** insure against;
6. a determination by the Commissioner of Insurance that loss of or changes to **our**

reinsurance covering the risk would threaten **our** financial integrity or solvency, or that continuation of the policy would place **us** in violation of California law or the laws of the state where **we** are domiciled, or threaten **our** solvency; or

7. A change by the insured or his representative in the activities of the commercial enterprise that results in a material added risk, a materially increased risk, or a materially changed risk, unless the added increased or changed risk is included in the policy.

**We** will mail or deliver advance written notice of cancellation to the insured named in the policy, at the mailing address shown on the policy at least 20 days before the effective date of cancellation if **we** cancel for reasons (1) or (3) above, and 40 days before the effective date of cancellation for any of the other reasons (2) or (4) through (7) above.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all **autos**.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

**CANCELLATION REFUND**

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is canceled, any refund due will be computed on a daily pro-rata basis.

**NONRENEWAL**

If **we** decide not to renew or continue this policy, **we** will mail notice of nonrenewal to the first named insured shown on the **declarations page** at the last known address appearing in **our** records. Notice will be mailed at least 60 days but not more than 120 days before the end of the policy period.

**We** are not required to send notice of nonrenewal if:

1. the transfer or renewal of a policy without any changes in terms, conditions or rates is between **us** and a member of **our** insurance group;
2. the policy has been extended for 90 days or less provided that the notice has been given in accordance with the paragraph above;
3. the insured has obtained replacement coverage, or if the insured has agreed in writing, within 60 days of the termination of the policy, to obtain that coverage;
4. the policy is for no more than 60 days and the insured is notified at the time of the issuance that it will be renewed;
5. the insured requests a change in the terms or conditions of risk covered by the policy within 60 days of the end of the policy period; or
6. **we** have made a written offer to the insured to renew the policy under changed terms or conditions or at a premium which exceeds 25% of the existing premium.

**PROOF OF NOTICE**

Proof of mailing of any notice will be sufficient proof of notice.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 4881 CA (02/19)

## CALIFORNIA AMENDATORY ENDORSEMENT

---

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**GENERAL DEFINITIONS**

The general definition of "**relative**" is deleted and replaced by the following:

13. "**Relative**" means, if the named insured is a natural person, any other person living in the household in which the named insured resides who is related to the named insured by blood, marriage or adoption, including a ward or foster child and including the registered domestic partner of the named insured.

**PART I—LIABILITY TO OTHERS**

**EXCLUSIONS**

The paragraph under "Criminal Acts" in the Exclusions section is deleted and replaced by the following:

15. **Criminal Acts**
    **Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured person.** This exclusion applies if the **insured person** is convicted of a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

The following is added as an additional paragraph at the end of the Exclusions section:

Pollution Exclusion Buy Back—If a payment is made subject to the MCS90 endorsement, the reimbursement language in the MCS90 endorsement is removed for a claim that is not covered under **covered pollution cost or expense** or is excluded under Exclusion 7 or 10 under Part I—Liability to Others.

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 77 o

The following paragraph is added to Legal Action Against Us:

**5. LEGAL ACTION AGAINST US**

**We** may not be sued for payment under the Uninsured/Underinsured Motorist Bodily Injury Endorsement or the Underinsured Motorist Property Damage Coverage Endorsement unless within two years from the date of the accident an **insured** or his or her legal representative has:

1. filed suit for **bodily injury** against the uninsured motorist in a court of competent jurisdiction and notice of such suit has been given to **us**;
2. reached an agreement with **us** as to the amount due under this coverage; or
3. formally instituted arbitration proceedings by notifying **us** in writing via certified mail, return receipt requested.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 5701 (02/19)

## INDIVIDUAL NAMED INSURED ENDORSEMENT

---

Not all customers are eligible for this coverage. This endorsement applies to **your** policy only if the form number appears on **your declarations page**. In no event will this coverage apply if the named insured is a corporation, partnership, organization, or any other entity that is not a natural person.

This endorsement changes **your** policy. Please read it carefully.

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

As used in this endorsement:

1. "**You**" and "**yours**" include **your** spouse, if a resident of the same household, except for notice of cancellation.
2. "**Non-owned auto**" means any **private passenger auto**, pickup, van, or **trailer** not owned by or furnished or available for the regular use of **you** or any **relative**, while it is in the custody of or being operated by **you** or any **relative**, with the permission of its owner.

## CHANGES IN PART I—LIABILITY TO OTHERS



A. If **you** are an individual, Exclusion 6 does not apply to **bodily injury** to **your** or any **relative's** fellow **employees**.

B. If any **private passenger auto you** own is an **insured auto** under Part I—Liability To Others and that **auto** is not used for any business purpose other than ranching or farming:

1. **Relatives** are **insureds** for any **insured auto you** own that is a **private passenger auto** and is not used for any business purpose other than ranching or farming, and for any other **auto** described in paragraph B.2. of this endorsement.
2. Any **auto you** do not own is an **insured auto** while being used, with the permission of its owner, by **you** or by any **relative** except:
   a. Any **auto** owned by any **relative**.
   b. Any **auto** furnished or available for **your** or any **relative's** regular use, including any **auto** rented for a period of more than 30 days.
   c. Any **auto** used by **you** or by any of **your relatives** while working in a business of selling, servicing, repairing, or parking **autos**.
   d. Any **auto** other than a **private passenger auto** used by **you** or any of **your relatives** while working in any business or occupation.
3. Exclusion 10 does not apply to any **insured auto** that is a **private passenger auto** and is not used for any business purpose other than ranching or farming.
4. Exclusion 16 is deleted and replaced by the following:
   **Vehicle Sharing—Private Passenger Autos**
   **Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

## CHANGES IN PART II—DAMAGE TO YOUR AUTO

A. If any **private passenger auto you** own is an **insured auto** under Part II—Damage To Your Auto, and that **auto** is not used for any business purpose other than ranching or farming, then a **non-owned auto** will also be considered an **insured auto**. However, the most **we** will pay for **loss** to a **non-owned auto** that is a **trailer** is $500.

B. Exclusion 9 is deleted and replaced by the following:
**We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

Case 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 79 of 93

## MOBILE EQUIPMENT AS INSURED AUTOS ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**PART I—LIABILITY TO OTHERS**

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY** is modified as follows:

B. When used in PART I—LIABILITY TO OTHERS, **insured auto** also includes:
   1. **Trailers**, designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
   2. **Mobile equipment** while being carried or towed by an **insured auto**;
   3. Any **temporary substitute auto**; and
   4. Any **mobile equipment** owned by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. This does not change the effect of exclusion 13 concerning the operation of **mobile equipment**.

**MEDICAL PAYMENTS COVERAGE**

If **you** pay the premium for Medical Payments Coverage, that endorsement is modified as follows:

**ADDITIONAL DEFINITIONS**

The definition of "**Insured**" is deleted and replaced by:

"**Insured**" means:

a. if the named insured shown on the **Declarations Page** is a natural person:
   (i) **you** while **occupying** any **auto**, other than an **auto owned** by **you** which is not an **insured auto**;
   (ii) a **relative** while **occupying** an **insured auto**, **temporary substitute auto**, or **non-owned auto**;
   (iii) **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not **occupying** a motor vehicle; and
   (iv) any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**; or

b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

## UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGES

If **you** pay the premium for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage, that endorsement is modified as follows:

## ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:

"**Insured**" means:

a. if the named insured shown on the **Declarations Page** is a natural person:
   (i) **you** or a **relative**;
   (ii) any person **occupying your insured auto** or a **temporary substitute auto**; and
   (iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or

b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:
   (i) any person **occupying your insured auto** or a **temporary substitute auto**; and
   (ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

## GARAGE OPERATIONS PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies **your** Commercial Auto Policy. Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

THIS ENDORSEMENT APPLIES ON A LEGAL LIABILITY BASIS UNLESS ONE OF THE DIRECT COVERAGE OPTIONS LISTED BELOW IS SHOWN ON **YOUR DECLARATIONS PAGE**.

### DIRECT COVERAGE OPTIONS

**Direct Excess Insurance.** If this "Direct Excess" option is shown on **your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto** or **towed property**, and is excess over any other collectible insurance regardless of whether the other insurance covers **your** or any other **insured's** interest or the interest of the owner of the **customer's auto** or **towed property**.

**Direct Primary Insurance.** If this "Direct Primary" option is shown on **your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto**, or **towed property**, and is primary insurance.

### INSURING AGREEMENT—ON-HOOK TOWING PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this On-Hook Towing Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "On-Hook Legal Liability," **we** will pay all sums for which an **insured** is legally liable to pay for **property damage** for **loss** to **towed property**. **We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

e 2:26-cv-02583-DAD-CKD Document 10 Filed 09/15/26 Page 82 o

## INSURING AGREEMENT—GARAGEKEEPERS STORAGE LOCATION PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this Garagekeepers Storage Location Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "Garagekeepers Legal Liability," **we** will pay all sums for which an **insured** is legally liable to pay as **property damage** for **loss** to a **customer's auto** or **customer's auto** equipment left in the **insured's** care while the **insured** is attending, servicing, repairing, parking, or storing it in **your garage operations** under:

1. Comprehensive Coverage.
   From any cause except:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

2. Collision Coverage.
   Caused by:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

**We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**, and only for the locations listed on **your declarations page**.

## ADDITIONAL DEFINITIONS

The following additional definitions apply throughout this Garage Operations Physical Damage Legal Liability Coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

1. "**Customer's auto**" means a customer's land motor vehicle, **trailer**, or **watercraft**, including a **customer's auto** left with **you** for service, repair, storage, or safekeeping. Customers include **your employees** and their **relatives** who pay for services performed.

2. "**Garage operations**" means the ownership, maintenance, or use of the locations shown on **your declarations page** for the purpose of a business of selling, servicing, repairing, parking, or storing **customers' autos**, and that portion of the roads or other accesses that adjoin such locations. **Garage operations** also includes all operations necessary or incidental to the performance of **garage operations**.

3. "**Insured**" means:
   a. **you**; and
   b. **your** partners (if **you** are a partnership), members (if **you** are a limited liability company), employees, directors, or shareholders, but only while acting within the scope of their duties.

4. "**Loaded in or on**" means connected to.

5. "**Towed property**" means tangible property, not owned by or registered to **you**, in transit while **loaded in or on**, or conveyed by, an **insured auto**. **Towed property** also means property when it is moved from the place where **you** accept it for movement by or onto **your insured auto** and after it is moved from **your insured auto** to the place where it is finally delivered by **you**. **Towed property** includes a towed **auto** or **watercraft**.

6. "**Watercraft**" means any craft, boat, vessel, or ship designed to transport persons or property by water.

7. "**Work you performed**" includes:
   a. Work that someone performed on **your** behalf; and
   b. The providing of, or the failure to provide, warnings or instructions.

**ADDITIONAL PAYMENTS**

In addition to **our** limit of liability, **we** will pay for an **insured** under this endorsement:

1. All expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. The premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
3. Reasonable expenses incurred by that **insured** at **our** request, including loss of earnings up to $250 per day;
4. All costs taxed against the **insured** in any lawsuit against that **insured we** defend; and
5. Interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

   **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

**<u>EXCLUSIONS</u>—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED.**

1. The On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages under this endorsement do not apply to any of the following:

a. Liability resulting from any contract or agreement by which the **insured** accepts responsibility for **loss**. This exclusion does not apply to an agreement that is an **insured contract** that was executed prior to the occurrence of any **property damage**;
b. **Loss** due to theft or conversion caused in any way by **you** or **your** employees, partners, members, directors, or shareholders;
c. Defective parts or materials;
d. Faulty **work you performed**;
e. **Loss** to any of the following:
   (i) Tape decks or other sound-reproducing equipment unless permanently installed in a **customer's auto**;
   (ii) Tapes, records, or other sound-reproducing devices designed to be used with sound-reproducing equipment;
   (iii) Sound-receiving equipment designed for use as a citizens band radio, two-way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **customer's auto** manufacturer for the installation of a radio; or
   (iv) Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment;
f. **Loss** caused by:
   (i) War, including undeclared or civil war;
   (ii) Warlike action by a military force, including any action to hinder or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents;
   (iii) Insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these; or
   (iv) Nuclear reaction or radioactive contamination.

   This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**;
g. **Loss** caused by strikes, lockouts, riots, civil commotion, or disorder; or
h. **Loss** due to inherent vice, delay, loss of profit, loss of market, loss of market value, or loss of use.

2. On-Hook Towing Physical Damage Legal Liability Coverage does not apply to:
   a. **Loss** to tarpaulins, tools, repair equipment, or materials and equipment for loading or unloading, which are carried in or on the **insured auto**;
   b. **Loss** to any **towed property** while it is in the custody of anyone other than an **insured**;
   c. **Loss** to objects of art, including paintings and statuary;
   d. **Loss** to jewelry; precious or semi-precious stones; gold, silver, platinum, or other precious metals or alloys;
   e. **Loss** to live animals;
   f. **Loss** to papers of any kind, including, but not limited to, money, securities, accounts, bills, currency, food stamps, notes, tickets, any other evidences of

debt, passports, deeds, mechanical drawings, blueprints, manuscripts, or exhibits;

g. Debris removal, including extraction of pollutants from land or water; or removal, restoration, or replacement of polluted land or water;
h. **Loss** caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property;
i. **Loss** to contraband or property in the course of illegal transportation or trade;
j. **Loss** to property caused by contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; any quality, fault, or weakness in the property that causes it to damage or destroy itself; or humidity, dampness, dryness, or changes in or extremes of temperature;
k. **Loss** caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of **pollutants**;
l. **Loss** caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by an **insured**, anyone to whom **you** entrust the **towed property**, or anyone who has an interest in the property;
m. **Loss** caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense;
n. **Loss** caused by the explosion of explosives; or
o. **Loss** to computers and electronic goods, including, but not limited to, computer hardware and component parts, televisions, DVD players, stereo or other sound reproduction equipment, or any other electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to store or play back recorded media.

## LIMITS OF LIABILITY

1. **On-Hook Towing Physical Damage Legal Liability Coverage.**
Regardless of the number, amount, or units of **towed property** or **insured autos**, **insureds**, premiums paid, claims made or lawsuits brought, the most **we** will pay for each **loss** is the aggregate amount of damages to all **towed property** while being **loaded in or on** or conveyed by one **insured auto**, not to exceed the limit of liability shown on the **declarations page** for this “On-Hook Legal Liability” coverage.

The most **we** will pay for **loss** to any **towed property** is the least of the following amounts:
a. The actual cash value of the damaged or stolen property at the time of **loss**;
b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or
c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

2. **Garagekeepers Storage Location Physical Damage Legal Liability Coverage.**
Regardless of the number of **customer’s autos** or **insured autos**, **insureds**,

premiums paid, claims made, or lawsuits brought, the most **we** will pay for each **loss** at each location is the "Garagekeepers Legal Liability" coverage limit shown on the **declarations page** for that location.

The most **we** will pay for a **loss** to any one **customer's auto** or all **customer's auto** equipment is the least of the following amounts:

a. The actual cash value of the damaged or stolen property at the time of **loss**;
b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or
c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

If the repair or replacement results in better than like kind and quality, **we** will not pay for the amount of the betterment.

An adjustment for depreciation or physical condition will be made in determining actual cash value in the event of a total loss.

In the event of payment of actual cash value for a total loss, **we** are entitled to all salvage, or credit for salvage, resulting from such **loss**.

3. **Deductibles.**

For each **loss** that qualifies for coverage under the On-Hook Towing Physical Damage Legal Liability Coverage, the deductible shown on the **declarations page** will be applied.

For each **loss** that qualifies for coverage under the Garagekeepers Storage Location Physical Damage Legal Liability Coverage, the "Each auto" deductible shown on the **declarations page** will be applied separately to each **customer's auto** or **towed property** sustaining **loss** as a result of a single **loss** event. The maximum aggregate deductible applied for a single **loss** event will not exceed the "Each occurrence" deductible shown on the **declarations page**.

If **we** pay all or any part of a deductible in the settlement of any claim or lawsuit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 87 of 93

## NON-OWNED TRAILER PHYSICAL DAMAGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Non-Owned Trailer Physical Damage Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession.

**We** will pay for a **loss** to the non-owned **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:

a. Collision Coverage. For **loss** caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.
b. Comprehensive Coverage. For any **loss** except one caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit;
c. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;
d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;

e. all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and

f. all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

**ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**

The following definition applies to this endorsement only:

"**Trailer**", when used in this endorsement, includes a shipping container.

**EXCLUSIONS**

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   (i) Nuclear Hazard.
      (1) The explosion of any weapon employing atomic fission or fusion; or
      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.
   (ii) War or Military Action.
      (1) War, including undeclared or civil war;
      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents; or
      (3) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.
b. **We** will not pay for loss of use.
c. **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;
   (i) Wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.
   (ii) Blowouts, punctures, or other road damage to tires.

**LIMIT OF INSURANCE AND DEDUCTIBLE**

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:
a. The actual cash value of the damaged or stolen property at the time of the **loss**;
b. The amount necessary to replace the stolen or damaged property with other of like kind and quality;
c. The amount necessary to repair the damaged property to its pre-loss condition; or
d. The applicable Limit of Liability for the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events,

e 2:26-cv-02503-DAD-CKD Document 10 Filed 09/15/26 Page 89 o

the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event. No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **trailer** to **you**.

**OTHER INSURANCE**

The insurance provided for a **loss** to a non-owned **trailer** is primary.

If coverage under more than one policy applies on the same basis, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form Z442 (02/19)

## ANY AUTOMOBILE LEGAL LIABILITY COVERAGE ENDORSEMENT

---

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**CHANGES TO PART I—LIABILITY TO OTHERS**

I. The following changes are made to the Additional Definitions Used in This Part Only section:

   A. The definition of "**insured auto**" is modified to include:

      1. **Hired autos**;
      2. **Non-owned autos**; and
      3. Any other **autos** owned by **you**:
         a. only while being used in the conduct of **your** business; and
         b. that do not qualify as either **hired autos** or as **non-owned autos**.

      However, this modification to the definition of **insured auto** does not apply to any **auto** acquired prior to the current policy period. But, for any type of **auto** that **you** acquire during the current policy period, this modification extends coverage to that **auto** during the remainder of the policy period.

B. The following definitions are added:



1. "**Hired auto**" means an **auto**:
   a. **you** lease, hire, rent or borrow; or
   b. **your employee** leases, hires or rents:
      i. under a contract in that individual **employee's** name;
      ii. at **your** direction and with your express permission; and
      iii. only while being used in the conduct of **your** business.

   However, this does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.

2. "**Non-owned auto**" means an **auto**:
   a. that **you** do not own;
   b. that is not a **hired auto**; and
   c. that is being used by **you** in connection with **your** business.

   This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

II. The first paragraph under the Limit of Liability section is deleted and replaced by the following:

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown on the **declarations page** for the coverage provided by this endorsement.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

PROGRESSIVE®
COMMERCIAL

1781 CA 0219